# United States Court of Federal Claims

**No: 03-2878C**
November 10, 2004

---

**TRACY KISSLER,**

***Plaintiff*,**

**v.**

**UNITED STATES OF AMERICA,**

***Defendant*.**

---

*Anthony W. Walluk* for the plaintiff.

*Hillary A. Stern*, Commercial Litigation Branch, Civil Division, United States Department of Justice, for the defendant.

## OPINION AND ORDER

**Block, *Judge.***

Claiming that the United States Air Force improperly evaluated a suggestion he submitted pursuant to a program meant to increase government efficiency and effectiveness, plaintiff Tracy Kissler demands nearly $725 million in damages. Defendant petitions this court to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims alleging that plaintiff failed to comply with the relevant statute of limitations. Upon review and as explained below, the court grants the defendant's motion and dismisses the complaint as time-barred.

## I. Factual Background[1]

On August 20, 1990, Mr. Kissler was an Air Force employee at Falcon Air Force Base in Colorado Springs, Colorado. On that date, Mr. Kissler submitted a suggestion pursuant to what was

---

[1] The court derives the following facts from the appendices to parties' filings related to the defendant's Motion to Dismiss ("Pl.'s or Def.'s App.").

then called the Air Force Suggestion Program.[2] Pl.'s App. at 5. The Air Force administered this program pursuant to 10 U.S.C. § 1124, which permitted "the payment of a cash award to ... a member of the armed forces ... who by his disclosure, suggestion, invention, or scientific achievement contributes to the efficiency, economy, or other improvement of operations or programs relating to the armed forces." *Id.* at (a). Mr. Kissler suggested that the Air Force use Global Positioning System ("GPS") technology rather than conventional surveying techniques to set ground control points in surveys of Air Force bases. Pl.'s App. at 5. In his suggestion, Mr. Kissler predicted that "the federal government would save millions of dollars annually" if his suggestion were implemented. *Id.*

On September 28, 1995, after a delay of over five years, the Air Force issued its evaluation of Mr. Kissler's suggestion. Def.'s App. at 8-9. The evaluation concluded that GPS technology had already been available for Air Force use when Mr. Kissler made his suggestion, but that there was no suggested Statement of Work ("SOW") that would facilitate contracting for GPS-assisted surveying. *Id.* Thus, allegedly in response to Mr. Kissler's suggestion, the Air Force developed a suggested SOW related to GPS-assisted surveying that it added to its Master Statement of Work. *Id.* Concluding that Mr. Kissler's suggestion resulted in "intangible" benefits[3] that were of "moderate" value, the Air Force awarded him $350. *Id.*

On March 20, 1996, Mr. Kissler requested that the Air Force reconsider its evaluation of his suggestion. *Id.* at 10-28. On June 26, 1997, the Air Force rejected this request, stating that "[m]ere disagreement with the evaluation is not grounds for reconsideration." *Id.* at 29-30. On August 27, 1997, Mr. Kissler asked a member of Congress to intervene on his behalf. *Id.* at 31. The Representative forwarded Mr. Kissler's request to the Air Force, which again reviewed its evaluation of Kissler's suggestion. *Id.* at 31. In a letter dated October 20, 1997, the Air Force restated its conclusion that its initial determination was appropriate. *Id.* at 32.

Through a letter to the Acting Secretary of the Air Force dated April 17, 1998, Mr. Kissler again requested that the Air Force reconsider its evaluation of his suggestion. *Id.* at 41-42. In response, the Air Force once again confirmed its initial evaluation. *Id.* at 43-45. A letter to Mr. Kissler dated July 22, 1998 explained that a panel of three Air Force employees with surveying and GPS experience had reviewed all cases in which GPS technology had been used to survey installations. *Id.* at 44-45. This panel's investigation revealed that: (a) whether or not surveyors of Air Force installations used GPS technology was worked out in the competitive procurement process; and (b) surveyors who used GPS technology in surveys of Air Force installations contracted to do so according to industry standards and other methods unrelated to Mr. Kissler's suggestion. *Id.* Thus, this panel concluded that there was "no situation where [Kissler's] suggestion had, or

---

[2] The program is now called the Innovative Development through Employee Awareness or "IDEA Program."

[3] These intangible benefits were described as the possibility of realizing "some savings of time since installations can draw on guidance in the Master Statement of Work as opposed to creating a statement of work from scratch" and "increas[ing] awareness of GPS technology for developing base maps for planning, engineering and other installation requirements." Def.'s App. at 9.

would have had, any impact on the survey methods chosen at any of the installations." *Id.* at 44.

According to Mr. Kissler, at some point in 2000, he became aware that the Air Force was using GPS technology to conduct surveys while he was stationed at Yokota Air Force Base in Japan. *Id.* at 46-47. On April 1, 2003, Mr. Kissler again requested reconsideration, which the Air Force rejected yet again on April 25, 2003. *Id.* at 46-48. Mr. Kissler filed his complaint in this court on December 31, 2003, demanding $724,265,255 in damages.

## II. Analysis

"Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The court concludes that plaintiff's claim first accrued on September 28, 1995, when the Air Force issued its initial award and evaluation. Because plaintiff filed his complaint on December 31, 2003—over eight years later—his complaint is time-barred.

"The 6-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). "[A] cause of action against the government has 'first accrued' only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Id.* at 1577.

All of the events that fix the government's alleged liability had occurred on September 28, 1995 when the Air Force issued its initial evaluation and $350 award. Even assuming, *arguendo*, the existence of a valid claim,[4] plaintiff was on notice that inquiry into a possible claim was called for when the Air Force issued its initial evaluation. *See L.E. Cooke Corp. v. United States*, 27 Fed.

---

[4] There is some concern about the legitimacy of plaintiff's claim. The court notes that plaintiff's claim for $724,265,255 in damage appears to contravene 10 U.S.C. § 1124(f), which limits "suggestion" awards to a maximum of $25,000. To be sure, the theory underlying plaintiff's demand (that government employees are entitled to the full amount of the savings allegedly realized through implementation of their suggestions) conflicts with the economic theory that informs 10 U.S.C. § 1124: the government would have no incentive to implement cost-saving employee suggestions if doing so resulted in an obligation to transfer all savings realized to the employee who made the suggestion. Plaintiff's claim also seems outlandish because it appears that surveyors who used GPS technology in performance of contracts to survey Air Force installations would have done so even if Mr. Kissler had not made his suggestion. Furthermore, assuming the legitimacy of plaintiff's claim, even if plaintiff had complied with the statute of limitations, there is some doubt whether this court would have jurisdiction because 10 U.S.C. § 1124(d)(1) provides that acceptance of a cash award under the program constitutes "an agreement by the member that the use by the United States of any idea ... for which the award is made may not be the basis of a claim against the United States by the member." *But see Griffin v. United States*, 215 Ct. Cl. 710 (1978) (ruling that through a suggestion-incentive program an implied contract was formed obligating the relevant agency to establish compensation without abuse of discretion and according to regulations).

Cl. 753, 754 (1993).

Plaintiff's contention that his claim did not accrue—or that the statute of limitations should be tolled—because he was exhausting administrative remedies or lacked a final determination until 1998 lacks merit. The Air Force regulations regarding the Suggestion Program in force at the time[5] permitted, but did not require, Mr. Kissler to request reconsideration. The law in this Circuit is clear: "[A] plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003). Thus, plaintiff's efforts over nearly eight years to obtain permissive reconsideration after permissive reconsideration[6] did not prevent his claim from accruing, nor did it toll the statute of limitations.

Equally without merit is plaintiff's argument that his claim did not accrue—or that the statute of limitations should be tolled—because he did not know the full extent to which GPS technology was being used in Air Force mapping until some point in 2000. A plaintiff is not required to know "the merits of the claim or the extent of damages before filing suit." *Carr v. United States*, 61 Fed. Cl. 326, 330 (2004). On the contrary, the statutory limitation on plaintiff's claim began to run when he knew or should have known that he had a potential claim. Plaintiff's discovery-of-new-facts claim is not persuasive because his own initial suggestion stated his belief that it would be worth millions of dollars to the federal government. Indeed, Mr. Kissler's multiple requests for reconsideration prior to 2000 indicate that he believed he had a claim against the Air Force long before he became aware of the extent of GPS technology use in Air Force mapping.

Also without merit is plaintiff's alternative argument that his claim did not accrue—or that the statute of limitations should be tolled—because he did not know that he could file a claim against the Air Force in this court until it was too late.[7] "Ignorance of ... legal rights" does not toll the 28 U.S.C. § 2501 statute of limitations. *Menominee Tribe of Indians v. United States*, 726 F.2d 718, 720-21 (Fed. Cir. 1984). Thus, plaintiff's ignorance of his legal rights does not help him here. Furthermore, there is no indication that the Air Force concealed information from plaintiff—or that the basis for Mr. Kissler's claim was "inherently unknowable." *See id.* at 721. Simply put, plaintiff's claim is time-barred.

---

[5] "**Award Reconsideration**. A suggester may ask for reexamination of the amount of an award or of the reason for disapproval of an award." AFR 900-4, 3-11 (July 23, 1987).

[6] It is notable that although the Air Force reviewed its evaluation of Mr. Kissler's suggestion multiple times, it never changed its determination or rationale after September 25, 1995.

[7] Apparently Mr. Kissler learned that he could file this suit "[t]hrough personal research on the Internet" after returning from Japan. While it is not clear when Kissler returned from Japan, the documents indicate it may have been sometime in 2003.

## III. Conclusion

For the reasons discussed above, the court **GRANTS** defendant's motion to dismiss. The Clerk is directed to now take appropriate action.

**NO COSTS.**

*Lawrence J. Block*
Lawrence J. Block
Judge